UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TABATHA DAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:17 CV 1964 ACL |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM**

Plaintiff Tabatha Dawson brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Dawson's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

### **I. Procedural History**

Dawson filed her applications for DIB and SSI on July 3, 2014, claiming that she became

unable to work on November 30, 2012, because of back pain, a pinched nerve in her pelvis, bulging discs in her neck, a frozen shoulder, double vision, muscle weakness in her legs and arms, arthritis in her knees and back, fluid in her shoulder, depression, and migraines. (Tr. 191-99, 202-11, 234.) Dawson was 38 years of age at the time of her alleged onset of disability. Her claims were denied initially. (Tr. 137-38, 141-46.) Following an administrative hearing, Dawson's claims were denied in a written opinion by an ALJ, dated May 10, 2016. (Tr. 54-64.) Dawson then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 9, 2017. (Tr. 1-7.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Dawson first argues that the ALJ's "findings of residual functional capacity do not find support in 'some' medical evidence, as required under the standards contained in *Singh* and *Lauer*." (Doc. 18 at 5.) She next contends that the "hypothetical question to the vocational expert fails to capture the concrete consequences of Plaintiff's impairment, and therefore, the vocational expert's testimony is not substantial evidence." *Id.*

## II. The ALJ's Determination

The ALJ first found that Dawson met the insured status requirements of the Social Security Act through March 31, 2017. (Tr. 59.) He further found that Dawson has not engaged in substantial gainful activity since November 30, 2012, the alleged onset date. *Id.* In addition, the ALJ concluded that Dawson had the following severe impairments: cervical degenerative disc disease, migraines with double vision, arthritis and degenerative joint disease of both knees, degenerative joint disease right shoulder, fibromyalgia, and mild lumbar osteoarthritis. *Id.* The

ALJ found that Dawson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 61.)

As to Dawson's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and can only "frequently" reach overhead with the right arm.

*Id.*

The ALJ found that Dawson's allegations regarding the extent of her limitations were exaggerated and inconsistent with the evidence. (Tr. 62.) The ALJ further found that Dawson was capable of performing past relevant work as a bench press operator. (Tr. 63.) The ALJ therefore concluded that Dawson was not under a disability, as defined in the Social Security Act, from November 30, 2012, through the date of the decision. (Tr. 64.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on July 3, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on July 3, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III. Applicable Law

#### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

ALJ found that Dawson did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 61.)

As to Dawson's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and can only "frequently" reach overhead with the right arm.

*Id.*

The ALJ found that Dawson's allegations regarding the extent of her limitations were exaggerated and inconsistent with the evidence. (Tr. 62.) The ALJ further found that Dawson was capable of performing past relevant work as a bench press operator. (Tr. 63.) The ALJ therefore concluded that Dawson was not under a disability, as defined in the Social Security Act, from November 30, 2012, through the date of the decision. (Tr. 64.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits filed on July 3, 2014, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income filed on July 3, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III. Applicable Law

#### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial

evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050

(8th Cir. 1999).  However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).  "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."  *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted).  *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to

determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the

claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

### A. RFC Determination

The ALJ made the following determination with regard to Dawson's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; and can only "frequently" reach overhead with the right arm.

(Tr. 61.)

Dawson argues that the ALJ failed to point to "some" medical evidence to support his RFC findings, and therefore failed to comply with the standards contained in *Singh* and *Lauer*.

RFC is what a claimant can do despite her limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement

that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

In determining Dawson's RFC, the ALJ first properly evaluated the credibility of Dawson's subjective complaints of pain and limitation. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529; SSR 96-7p.

Dawson testified that she stopped working in November 2012 due to back pain she experienced from lifting patients. (Tr. 85-86.) She stated that she was unable to work at the time of the hearing due to knee, leg, and back pain. (Tr. 86.) Dawson testified that she cannot lift or bend for long periods, and must either sit down or lay down to ease her pain. *Id.* Dawson received regular treatment at Advanced Pain Center, primarily from Abdul Naeem Naushad, M.D., from her alleged onset date through the ALJ's decision, for her various pain complaints. (Tr. 414-1080.) She was prescribed pain medication and received occasional steroid injections. *Id.*

The ALJ first summarized the medical evidence and found that the clinical and objective findings were inconsistent with Dawson's allegations of total disability. (Tr. 62.) *See Goff v. Barnhart*, 421 F.3d 785, 792-93 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing credibility of subjective complaints).

The ALJ noted that there was no evidence of muscle atrophy, paravertebral muscle spasms,

sensory or motor loss, reflex abnormality, gait disturbance, or reduced range of motion of the spine or joints. (Tr. 62.) He stated that the lack of these findings suggest Dawson continued to move about on a fairly regular basis. *Id.* The ALJ next stated that, although Dawson reported leg and arm weakness, neurologist Jamie Haas M.D., found that there was "no neurological explanation" for the alleged symptoms based on his examination of Dawson and review of her MRI and other imaging. (Tr. 62, 736.) On examination, Dr. Haas noted Dawson had full strength, normal bulk and tone in all four extremities, and "ok casual gait." (Tr. 739.) Dr. Haas referred Dawson to her pain management physician. *Id.*

The ALJ noted that Dawson has been diagnosed with inflammatory arthritis, with "mild" swelling and stiffness of the hands, and complaints of pain in the knees, elbows, and shoulders. (Tr. 62.) The ALJ acknowledged that MRIs revealed degenerative changes, including left facet hypertrophy in the cervical spine; mild tendon changes, degenerative joint disease, and a small amount of fluid in the joint of the left shoulder; and moderate AC joint arthritis with "marked" swelling and edema of the right shoulder. (Tr. 62, 555, 583.) He stated that these impairments are "more than adequately addressed" in the RFC limitation to light work with only frequent overhead use of the right arm. (Tr. 62.)

The ALJ noted that an abnormal gait and station was mentioned only once, on October 18, 2012. (Tr. 63.) Dawson presented on that date to the Advanced Pain Center with complaints of severe pain, an antalgic gait, and straightening of the normal lordosis of the lumbar spine. (Tr. 63, 526.) The ALJ pointed out that pain specialist Dr. Naushad reported significant improvement after an analgesic injection was administered on October 29, 2012. (Tr. 63, 533.) Dawson also reported that her discomfort was "80% relieved" by epidural injections in 2014. (Tr. 62, 526.) The ALJ stated that, with continued treatment, Dawson has experienced good pain relief despite

her failure to stop smoking cigarettes as recommended. (Tr. 63.) *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("Evidence of effective medication resulting in relief...may diminish the credibility of a claimant's complaints.").

With regard to the opinion evidence, the ALJ stated that Dr. Oluseyi Ogundimu, one of Dawson's pain management physicians, advised Dawson to lift no more than ten pounds on January 14, 2013. (Tr. 63, 781.) He stated that this instruction, however, was not repeated in the record and was apparently only a temporary restriction. (Tr. 63.) No physician has expressed the opinion that Dawson is disabled.

The ALJ next discussed Dawson's activities of daily living. He pointed out that Dawson was treated for shoulder pain after lifting a case of water from an overhead rack in a convenience store on April 22, 2015, which indicates that she is not as restricted as she alleges. (Tr. 63, 1020.) Dawson testified that she was able to go out and socialize with friends, drive, lift twenty pounds in the winter and forty to fifty pounds in the summer, shop for groceries, cook, and perform household chores. (Tr. 63, 93, 102, 105.) Additionally, the ALJ noted that Dawson presented at a hospital at 2:15 a.m., in late November 2015, after falling leaving a bar. (Tr. 63, 998-99.) The ALJ properly found Dawson's daily activities inconsistent with her allegations of disability. *See, e.g., Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that the claimant's complaints were not fully credible).

Finally, the ALJ noted that Dawson's work record reveals no substantial earnings before her alleged onset of disability, which fails to establish that she left the work force solely because of her impairments. (Tr. 63.) *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ

properly found claimant not credible due in part to his sporadic work record reflecting relatively low earnings and multiple years with no reported earnings).

The ALJ concluded that his RFC determination was supported by the objective medical evidence, Dawson's daily activities, and Dawson's work history. (Tr. 63.) He stated that Dawson's "self-serving testimony" was inconsistent with the weight of the evidence. *Id.*

The undersigned finds that the ALJ's RFC determination is supported by substantial evidence on the record as a whole. The ALJ found that the objective medical evidence did not support Dawson's allegations of disabling limitations. The ALJ relied on the findings of Dr. Naushad and other examining physicians, which note some tenderness but no spasms and generally normal strength, sensation, range of motion, and gait. (Tr. 688, 692, 702, 706, 710, 714, 718, 725.) No physician imposed any long-term restrictions on Dawson's ability to work. "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (citations omitted).

In addition, the ALJ performed a proper credibility analysis and found Dawson's allegations of disabling symptoms were not credible. Dawson's own testimony that she is able to go out and socialize with friends, go to bars, drive, shop, perform household chores, and lift between 20 and 50 pounds, depending on the time of year, is consistent with the ability to perform a limited range of light work. Dawson failed to meet her burden to establish a more restrictive RFC.

Accordingly, the ALJ did not err in determining Dawson's RFC.

**B.  Vocational Expert Testimony**

Dawson next argues that the hypothetical question posed to the vocational expert failed to

capture the concrete consequences of Dawson's impairments. Specifically, she contends that the ALJ made no explicit findings as to the mental demands of her past work.

"A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010).

The undersigned has found that the ALJ's RFC determination is supported by substantial evidence on the record as a whole. The ALJ found that Dawson did not have a severe mental impairment, and did not impose any mental limitations in her RFC. Dawson does not challenge these findings, and points to no specific mental requirements of her past work she is unable to perform.

The hypothetical question posed to the vocational expert is consistent with the ALJ's RFC determination. The vocational expert testified that Dawson could return to her past work as a press operator as generally performed with the RFC found by the ALJ. (Tr. 108.) The undersigned notes that the vocational expert testified that this position was unskilled, with an SVP of 2, which addresses the mental requirements of the position. *Id.* Thus, the hypothetical posed to the vocational expert accounted for all of Dawson's credible limitations, and the vocational expert's testimony that Dawson was capable of performing past work constitutes substantial evidence supporting the ALJ's decision.

Accordingly, Judgment will be entered separately in favor of the Defendant in accordance with this Memorandum.

                                    **/s/** Abbie Crites-Leoni
                                    ABBIE CRITES-LEONI
                                    UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018.